## DODGE v. MILLS.

EXECUTORS—ACTION—PARTIES—STOCKHOLDER'S BILL.

On a bill by a stockholder of a street railway company for an accounting and to secure his share of the earnings of the company and of the proceeds of a transfer of its assets in exchange for interests in other corporations and property, executors of one of the officers of the company, into whose hands a portion of the property involved has come by reason of the transfer of their testator's interest in the company, are proper parties, by reason of the necessity of concluding the estate by the decree.

Appeal from Ingham; Wiest, J. Submitted October 24, 1907. (Docket No. 134.) Decided December 10, 1907.

Bill by Frank L. Dodge against Myron W. Mills and David Mills, executors of the last will and testament of Nelson Mills, deceased, and others, for an accounting. From an order overruling the demurrer of defendant executors, they appeal. Affirmed.

*Black & Reasoner* (*Rollin H. Person,* of counsel), for complainant.

*Moore, Brown, Miller & Ladd,* for defendants.

HOOKER, J. The bill of complaint alleges: That the complainant was a stockholder, with others, including Nelson Mills, now deceased, and other of the defendants, in the Lansing & Suburban Traction Company, incorporated March 8, 1904, under the street-railway act. That a week later said Nelson Mills died, whereupon his sons, David Mills and Myron W. Mills, were appointed executors of his will, and have since managed his estate and interest in said corporation, and were elected and have since acted as directors thereof. That at the organization of said company, Nelson Mills, Myron W. Mills, James R. Elliott, and George G. Moore were all of the stockholders of the company, and they caused 9,000 of the 10,000 shares to be issued to themselves, and became and have since remained owners of nine-tenths of the stock of the company, and they elected themselves, and, with the exception of Nelson Mills, have remained directors and officers of the company. At that time the complainant became, and he still remains, owner of 100 shares of said stock of the par value of $10,000. That said company then owned a large and valuable railway property, consisting of seven miles of street railway in the city of Lansing, and railways and franchises to the Agricultural College and to St. Johns, and other property. That said property cost and was then worth $700,000 and upwards.

The bill states further, that said property was operated by the persons above named until April 10, 1906. That they dominated all meetings, and during that time made no report of its business or financial condition, but that during that time they made several valuable additions, viz., a line from said College to Pine Lake, where it purchased and partly developed a resort, a line to Waverly Park, where it made another resort, additions to the Lansing system within the city, etc. That soon after the organization, at

which time said company had an indebtedness of only $300,000, being about one-third of the value of its assets, said officers and directors made and delivered a mortgage of its property, to secure bonds to be issued by said company for $750,000, and that during the year 1904 all of said bonds were delivered by them to another corporation styled the "Nelson Mills Company," organized about February 11, 1904, by Nelson Mills, Myron W. Mills, Barney Mills, James R. Elliott, and George G. Moore, who were its sole stockholders, and have so remained, with the exception of Nelson Mills, who died as aforesaid. The purpose of this company was to build and equip street railways, etc., and especially to handle and manipulate, in their personal interests, the bonds and finances of the Lansing & Suburban Traction Company, then about to be formed. That it is now claimed by the defendants that said Nelson Mills Company hypothecated or pledged said bonds to the Knickerbocker Trust Company of New York, whereby it borrowed $600,000 in money and paid it to the Lansing & Suburban Traction Company, and that it used in part to pay its debt of $300,000 and in part to pay for additions and improvements as aforesaid.

The bill states, further, that about May 1, 1905, the defendants caused the Lansing & Suburban Traction Company to again mortgage its property to the Trust Company of America to secure bonds in the amount of $1,000,000 to be issued by said traction company. These bonds, to the amount of $1,000,000, were delivered to the Nelson Mills Company. That said company and other defendants claim that it paid to said traction company the sum of $800,000. That $600,000 of this was used to retire the former issue of bonds to the amount of $750,000, and to repay the sum of $600,000 borrowed upon them from the Knickerbocker Trust Company. Complainant's bill charges that if this claim is true, said traction company received $500,000 or thereabouts more than enough to cancel its indebtedness, in addition to large earnings which have not been accounted for.

It is further stated that about March 31, 1906, a new corporation was formed called the "Michigan United Railway Company," with an authorized capital of $5,000,000. None of defendants appeared as incorporators, but they were the real promoters, and it was their object to merge therein all of the properties of several railway companies, including that of the Lansing & Suburban Traction Company, in each of which defendants had a majority of the stock, to cut off the minority stockholders, or to force them to accept a nominal and inadequate consideration for their stock, and by manipulation of the stock and bonds of the new corporation make large profits for themselves. Soon after, the persons mentioned and one Tomlinson became the owners of a majority of the stock of said company. They caused a meeting of the stockholders of the Lansing & Suburban Traction Company to be held, at which on behalf of said Michigan United Railway Company, of which they were officers, they made an offer to purchase the assets, etc., of the Lansing & Suburban Traction Company and pay to the stockholders 10 per cent. of the par value of their stock, or to exchange with them an equal amount of common stock of said Michigan United Railway Company, both at par value, and, having the power as owners of a majority of the stock of both companies, they voted in favor of accepting said offer and declared the same carried, against the consent and protest of complainant. Thereupon all property was transferred accordingly.

The bill states that this was a fraud upon the rights of stockholders not consenting thereto. It is further alleged that, while said United Railway Company has received the property, it has never made or offered compensation of any kind to the Lansing & Suburban Traction Company for its property; that the scheme was conceived to defraud other stockholders of the Lansing & Suburban Traction Company. Subsequently the Michigan United Railway Company, through its officers, the defendants, made a trust deed to secure its bonds in the sum of $7,500,000, cover-

ing all of its property, $3,400,000 of which was to be devoted to the payment of outstanding bonds of the several roads, $1,600,000 of which were devoted to the payment of $100,000 in bonds of the Lansing & Suburban Traction Company. That said sum was delivered to Myron W. Mills, the vice president of the Michigan United Railway Company, one of these defendants. That bonds amounting to $1,040,000 were turned over to the Nelson Mills Company, the holders of said former bonds, sufficient to pay said bonds, and all debts of the traction company and a large dividend to some of the defendants, in their own rights and as executors of said Nelson Mills' estate, and that $240,000 or more was so distributed, and that it is the intention to distribute to said persons the further sum of $560,000. It also claims that $1,000,000 of the preferred stock of the Michigan United Railway Company has been issued to said parties, and that the same should be accounted for. There are other allegations that need not be mentioned further than to say that it is charged that large sums belonging to the Lansing & Suburban Traction Company are included in the property held by the Michigan United Railway Company, the Nelson Mills Company, the executors of the estate of Nelson Mills, deceased, and the individual defendants.

The bill prays an accounting and a decree for the value of complainant's stock, with interest, and his proportionate share of all profits. The executors demurred to the bill, upon several grounds, only two of which appear to be relied upon, viz.:

"(3) The said bill of complaint contains no matter of equity wherein this court can grant any decree or give the complainant any relief or assistance as against these defendants.

"(4) That it appears by the complainant's said bill that there is no privity between the said complainant and these defendants to enable the complainant to call on these defendants for an accounting respecting any of the matters set forth and relied on in said bill of complaint."

The bill shows that the fund which it alleges to have

come to the possession of the executors arises from the transfer by them of decedent's interest in the Lansing & Suburban Traction Company in exchange for interests in other corporations and property, under circumstances which at least show a reasonable ground for a claim of right to the fund by those interested in the estate. These persons could not be concluded by any decree, in proceedings to which the estate is not a party, either as against the complainant or the executors, whose duty it is to defend the estate's interests in the property. This property has been received by them, lawfully, in their representative capacity, and, as said in *De Valengin's Adm'r* v. *Duffy*, 14 Pet. (U. S.) 290:

" Whatever property or money is lawfully recovered or received by the executor or administrator after the death of his testator or intestate, in virtue of his representative character, he holds as assets of the estate; and he is liable therefor in such representative character to the party who has a good title thereto "—at least to the cestui que trust.

This being so, the complainants were justified in making the estate a party, through its executors, that the decree when rendered should be final and conclusive upon all interests, if for no other reason. This is not an action to recover damages for a tort, but an effort to follow a fund, under circumstances which show that it is held by executors under a claim of right, as property belonging to an estate, which claim they not only may assert, but which those interested in the final distribution of the estate have a right to require them to assert and defend. This appearing on the face of the bill makes them proper parties in their representative capacity, while the personal interest which they are shown to have makes them proper parties in their own right.

The decree is affirmed.

GRANT, BLAIR, MONTGOMERY, and MOORE, JJ., concurred.